*IN THE UNITED STATES DISTRICT COURT*
*FOR THE WESTERN DISTRICT OF MICHIGAN*
*SOUTHERN DIVISION*


UNITED STATES OF AMERICA,

                    Plaintiff,

vs.                                    Case No: 1:23-cr-26

DONNA JEAN SCHUCKER,

              Defendant.
_____/

*PLEA HEARING*

*BEFORE THE HONORABLE SALLY J. BERENS*
*U.S. MAGISTRATE JUDGE*

*Grand Rapids, Michigan*
*December 20, 2023*

APPEARANCES:
For the Plaintiff:    MR. DAVIN REUST
                      The Law Building
                      330 Ionia Avenue, NW
                      Grand Rapids, MI 49501-0208
                      (616) 456-2404

For the Defendant:    MS. HELEN C. NIEUWENHUIS
                      50 Louis Street NW, Suite 300
                      Grand Rapids, Mi 49503-2633
                      (616) 742-7420




TRANSCRIBED BY:       Genevieve A. Hamlin, CSR-3218 RMR, CRR
                      Federal Official Court Reporter
                      110 Michigan Avenue NW
                      Suite 601
                      Grand Rapids, MI 49503
                      (517) 881-9582

1     Grand Rapids, MI

2     December 20, 2023

3     3:05 p.m.

4                    *PROCEEDINGS*

5          THE CLERK:  Court calls case number 23-cr-26, United

6     States versus Donna Jean Schucker.

7          THE COURT:  Good afternoon, everyone.  We are on the

8     record this afternoon for a second try for a change of plea

9     hearing in this case.  Let's start with appearance of counsel.

10          MR. REUST:  Good afternoon, Your Honor.  Davin Reust

11     for the United States.

12          MS. NIEUWENHUIS:  Good afternoon.  Helen Nieuwenhuis

13     on behalf of Ms. Schucker, and she's here as well seated to my

14     right.

15          THE COURT:  Good afternoon to both of you.

16          THE DEFENDANT:  Good afternoon.

17          THE COURT:  Ms. Nieuwenhuis, does your client wish to

18     proceed?

19          MS. NIEUWENHUIS:  Yes, she does, Your Honor.

20          THE COURT:  All right.  We talked about a lot, in

21     fact, everything that I'm going to have to repeat again today,

22     at our last hearing.  I might try to shorten that just a

23     little bit but I don't know if I can in most respects, but,

24     Ms. Schucker, do you remember clearly that plea hearing which

25     was only a couple weeks ago?

1       THE DEFENDANT:  Yes, I do.

2       THE COURT:  All right.  And do you remember all the

3   things we talked about at that hearing?

4       THE DEFENDANT:  Yes, I do.

5       THE COURT:  And do you understand everything we

6   talked about in that hearing?

7       THE DEFENDANT:  Yes, I do.

8       THE COURT:  And we -- one of the things we talked

9   about was that you have the right to have a district court

10  judge conduct this hearing.  Do you remember that as well?

11      THE DEFENDANT:  Yes.

12      THE COURT:  And do you remember the difference

13  between a district court judge and magistrate judge?

14      THE DEFENDANT:  Yes.

15      THE COURT:  All right.  And it is still your

16  intention and free will decision to consent to my conducting

17  this hearing today?

18      THE DEFENDANT:  Yes.

19      THE COURT:  All right.  Up on the screen we have the

20  Court's consent form which explains a lot of those things as

21  well.  Is that your signature on the form?

22      THE DEFENDANT:  Yes, it is.

23      THE COURT:  And did you read and understand that form

24  before you signed it?

25      THE DEFENDANT:  Yes.

1    THE COURT:  So it is your decision to consent to my

2    conducting this hearing today?

3    THE DEFENDANT:  Yes.

4    THE COURT:  And I'm also required to ask if counsel

5    consents.

6    MS. NIEUWENHUIS:  Yes, Your Honor.

7    MR. REUST:  Yes, Your Honor.

8    THE COURT:  All right.  I do find that that is a

9    knowing and voluntary decision by the defendant to consent to

10   my conducting this hearing.

11   We also talked a little bit about your competency

12   last time, and I remember some of your answers to that but I

13   suppose I should ask you if anything is bothering you today

14   physically or mentally that would make it difficult for you to

15   understand what's happening in court?

16   THE DEFENDANT:  No, not at all.

17   THE COURT:  Okay.  And have you taken any medication,

18   other drugs, or alcohol in the last 24 hours?

19   THE DEFENDANT:  Nothing other than medication that

20   I'm prescribed.

21   THE COURT:  Okay.  And we talked about that a little

22   bit the last time, too, I believe, right?

23   THE DEFENDANT:  (Non-verbal response).

24   THE COURT:  You have to say yes or no.

25   THE DEFENDANT:  I'm sorry, yes.

1        THE COURT:  All right.  And, Ms. Nieuwenhuis, do you

2   have any reason to believe that she's not competent to proceed

3   today?

4        MS. NIEUWENHUIS:  No, Your Honor.

5        THE COURT:  She also certainly appears to me to be

6   understanding what I'm saying and responding appropriately, so

7   we will proceed.

8        I think you will recall that I told you the last time

9   that you have the right to counsel at every stage of the

10   proceedings against you.  Do you remain satisfied with Ms.

11   Nieuwenhuis' representation of you?

12        THE DEFENDANT:  Yes.

13        THE COURT:  I also told you back then that you have

14   the right to remain silent and anything you do say could be

15   used against you at your trial in this matter, but if you

16   decide to plead guilty, you'll be giving up that right because

17   I'll be asking you questions about what you did that makes you

18   guilty of this crime.  Do you understand all of that?

19        THE DEFENDANT:  Yes.

20        THE COURT:  And is it your intention to give up your

21   right to remain silent in order -- for the purposes of

22   entering a guilty plea today?

23        THE DEFENDANT:  Yes.

24        THE COURT:  All right.  My courtroom deputy is going

25   to swear you in.

1          THE CLERK:  Please raise your right hand.

2                     *DONNA JEAN SCHUCKER,*

3      *having been sworn by the Clerk at 3:08 p.m., testified as*

4                          *follows:*

5          THE DEFENDANT:  I do.

6          THE COURT:  All right.  So you've just sworn to tell

7      the truth, and that means that if you were to make a false

8      statement, the government would have the right to use that

9      false statement against you in any subsequent prosecution for

10     perjury or making a false statement.  Do you understand that?

11         THE DEFENDANT:  Yes.

12         THE COURT:  Have you had an opportunity to review the

13     superseding felony information with your lawyer?

14         THE DEFENDANT:  Yes, I did.

15         THE COURT:  All right.  Do you have it in front of

16     you there?

17         THE DEFENDANT:  Yes.

18         THE COURT:  So, you are charged slightly differently

19     in this superseding felony information than in the prior

20     superseding felony -- I mean, prior felony information.  In

21     the prior felony information you were charged with concealing

22     a material fact under 18 United States Code

23     Section 1001(a)(1).  In the superseding felony information

24     you're charged with making a materially false statement in

25     violation of 18 United States Code Section 1001(a)(2), and

specifically what's alleged is that on or about September 7th

of 2022 in Lake County, which is in this judicial district,

that you knowingly and willfully made a materially false,

fictitious, and fraudulent statement in a matter related to an

offense under Chapter 109A of Title 18 United States Code

which was within the jurisdiction of the executive branch of

the United States.  Specifically, you responded no when asked

by special agents of the Department of Justice Office of

Inspector General, have you ever had sex with an inmate.  This

is alleged that that was a lie because in June and July of

2022 you had sex with an inmate while she was working as a --

while you were working as a case manager at the Northlake

Correctional Facility.

Do you understand what you've been charged with in

the superseding felony information?

THE DEFENDANT:  Yes, I do.

THE COURT:  There are certain elements that the

government would have to prove for you to be guilty of that

offense.  They would have to prove a number of elements.

First, they would have to prove that you made a statement.

Second, that the statement was false.  Third, that the

statement was material, meaning that it mattered to the person

you were saying it to.  Fourth, that you acted knowingly and

willfully, and, fifth, that the statement pertained to the

matter within the jurisdiction of the executive branch of the

1   United States and related to an offense under Chapter 109A of

2   Title 18 of the United States Code.

3          Do you understand what the elements are that the

4   government would have to prove for you to be guilty of this

5   offense?

6          THE DEFENDANT:  Yes, I do.

7          THE COURT:  There are certain statutory penalties

8   that are associated with this offense.  They are the same as

9   what we discussed before.  You face up to eight years in

10  prison -- up to eight years in prison, a maximum fine of

11  $250,000, a maximum period of supervised release of three

12  years, special assessment of a hundred dollars, and you could

13  be subject to restitution.  I don't believe that was listed in

14  the prior penalty sheet.  Is there restitution that is

15  contemplated in this case?

16         MR. REUST:  It may not have been, but there is, Your

17  Honor.

18         THE COURT:  All right, thank you.

19         MR. REUST:  I think it was in the plea agreement but

20  it may not have been --

21         THE COURT:  All right.  Ms. Schucker, do you

22  understand what the penalties could be in your case?

23         THE DEFENDANT:  Yes, I do.

24         THE COURT:  We talked last time a little bit about

25  supervised release.  Supervised release is a period of time

1    following incarceration in which a defendant is under the

2    supervision of the Court.  If a defendant violates a term of

3    her supervised release, she could be sent back to prison, and

4    in some circumstances that could result in someone spending

5    more time in prison than what is called for by the statutory

6    maximum of the offense.  Do you understand the concept of

7    supervised release?

8                THE DEFENDANT:  Yes, I do.

9                THE COURT:  And you told me before but I want to

10   reconfirm, has Ms. Nieuwenhuis talked to you about the

11   sentencing guidelines?

12               THE DEFENDANT:  Yes, she has.

13               THE COURT:  And you understand that the guidelines

14   are advisory, but the Court has to calculate them and consider

15   them in determining your sentence; is that correct?

16               THE DEFENDANT:  Yes.

17               THE COURT:  And in this case only Judge Beckering can

18   ultimately determine your guidelines, and after -- we

19   discussed before that a pre-sentence report would be prepared

20   and a probation officer would do an initial calculation of

21   your guidelines.  Both you and the government will have the

22   opportunity to review that and to object to it, and Judge

23   Beckering won't be able to make a determination about your

24   advisory guidelines sentence range until all of that has

25   happened.  Do you understand all of that?

1          THE DEFENDANT:  Yes, I do.

2          THE COURT:  And the Court, Judge Beckering, would

3     also consider any possible departures under the sentencing

4     guidelines and will also consider the applicable sentencing

5     factors that are set out in 18 United States Code 3553(a),

6     like the nature and circumstances of the offense, your history

7     and characteristics, the need for the sentence imposed, and

8     the kinds of sentences available, including the need for

9     restitution.  Do you understand all of that?

10          THE DEFENDANT:  Yes, I do.

11          THE COURT:  And do you feel like you've had enough

12     time to talk with Ms. Nieuwenhuis about any of that such that

13     you have all of your questions answered?

14          THE DEFENDANT:  Yes, I do.

15          THE COURT:  Judge Beckering has the authority to

16     impose a sentence that is more or less severe than what's

17     called for by the guidelines.  Do you understand that, too?

18          THE DEFENDANT:  Yes.

19          THE COURT:  And has anyone made you any promises

20     about what your sentence will be?

21          THE DEFENDANT:  No.

22          THE COURT:  That's good, because if your sentence is

23     more severe than you think it might be, you'll still be bound

24     by your plea and you won't be able to withdraw on that basis.

25     Do you understand that, too?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Parole in the federal system has been

3     abolished.  If you're sentenced to prison, you won't be

4     released early on parole.  Do you understand that, too?

5          THE DEFENDANT:  Yes.

6          THE COURT:  And if you are convicted of a felony, and

7     this would be a felony, you may be deprived of certain civil

8     rights, including the rights to vote, to hold office, to serve

9     on a jury, and to possess firearms.  Do you understand that,

10    too?

11         THE DEFENDANT:  Yes.

12         THE COURT:  And I think we decided that she was -- or

13    discussed -- not decided but discussed that she was a United

14    States citizens and not on any sort of probation or parole; is

15    that correct, Ms. Nieuwenhuis?

16         MS. NIEUWENHUIS:  It is correct.

17         THE COURT:  All right.  Do you understand all of the

18    penalties we just discussed, Ms. Schucker?

19         THE DEFENDANT:  Yes.

20         THE COURT:  Do you have any questions about any of

21    that?

22         THE DEFENDANT:  No.

23         THE COURT:  Do you have any questions about the

24    advisory sentencing guidelines and how that's calculated?

25         THE DEFENDANT:  No.  She explained it to me.

1       THE COURT:  All right.  In some circumstances,

2   although we'll talk about this a little bit more in connection

3   with the amended plea agreement, but both you and the

4   government in some circumstances would have a right to appeal

5   your sentence.  Do you understand that, too?

6       THE DEFENDANT:  Yes.

7       THE COURT:  I'm going to switch gears and talk to you

8   a little bit about your rights.  You are intending here to

9   plead guilty to a superseding felony information.  You have

10  the right to be indicted rather than pleading to an

11  information.  An information is a charge that's laid out by

12  the prosecutor.  You have the right, though, to have that

13  charged reviewed by a grand jury.

14      A grand jury is between 16 and 23 people, different

15  people than would be the trial jury in your case, who are

16  charged with reviewing the charges that the government wishes

17  to bring and a majority of whom have to agree there's probable

18  cause to support the charge.  Do you understand the concept of

19  indictment?

20      THE DEFENDANT:  Yes.

21      THE COURT:  And is it your intention to waive your

22  right to indictment?

23      THE DEFENDANT:  Yes.

24      THE COURT:  Has anyone threatened, coerced, or

25  promised you anything to get you to give up your right to

1       indictment?

2               THE DEFENDANT:  No.

3               THE COURT:  And up on the screen we have the Court's

4       waiver of an indictment form.  Is that your signature on the

5       form -- on that form?

6               THE DEFENDANT:  Yes, it is.

7               THE COURT:  And did you read and understand that form

8       before you signed it?

9               THE DEFENDANT:  Yes, I did.

10              THE COURT:  Okay.  You have the right to plead not

11      guilty and to persist in that plea and take this case to

12      trial.  You have the right to a trial by jury with the

13      assistance of your lawyer who, as you know, if necessary,

14      would be appointed to represent you.

15              You have the right to at least 30 days to prepare for

16      a trial -- and I should have said, if necessary, to be

17      appointed to represent you at no cost to you.  You have at

18      least 30 days to prepare for a trial and the right to confront

19      and cross examine the witnesses that are called against you.

20      Do you understand all of that?

21              THE DEFENDANT:  Yes.

22              THE COURT:  You have the right to call witnesses on

23      your own behalf and to compel their attendance with something

24      called a subpoena, which is just a court order that would

25      require them to attend.  You have the right not to be

1    compelled to incriminate yourself and the right not to

2    testify, and if you decided not to testify, Judge Beckering

3    would instruct the jury that they could not hold that against

4    you.  Do you understand all of that?

5              THE DEFENDANT:  Yes.

6              THE COURT:  You also have the right to testify and

7    present evidence on your own behalf, although you're under no

8    obligation to do that because you're presumed innocent of this

9    charge and all these charges, and the government and only the

10   government has the burden of proving you guilty on each charge

11   beyond a reasonable doubt.  Do you understand all of that?

12             THE DEFENDANT:  Yes.

13             THE COURT:  If you plead guilty there will be no

14   trial of any kind and you'll be waiving your right to a trial.

15   You'll be waiving all the rights that I've just explained

16   except, of course, to have Ms. Nieuwenhuis with you throughout

17   these proceedings.  Do you understand all of the rights I just

18   explained?

19             THE DEFENDANT:  Yes.

20             THE COURT:  All right.  So to sum up where we are, do

21   you understand the nature of the charge in the superseding

22   felony indictment -- information, excuse me, the penalties

23   provided by law, and your rights as I've explained them to you

24   both today and two weeks ago?

25             THE DEFENDANT:  Yes, I do.

1    THE COURT:  Or however long ago.  And, again, Ms.

2   Schucker, have you had enough time to think about it and talk

3   about with your lawyer what is a very important decision for

4   your life today?

5    THE DEFENDANT:  Yes, I have.

6    THE COURT:  And do you feel ready to make that

7   decision?

8    THE DEFENDANT:  Yes.  I do.

9    THE COURT:  In that case, how do you plead to the

10   charge in the superseding felony information charging making a

11   materially false statement?

12    THE DEFENDANT:  Guilty.

13    THE COURT:  Has anyone threatened you to get you to

14   plead guilty?

15    THE DEFENDANT:  No.

16    THE COURT:  Anyone forcing you to plead guilty?

17    THE DEFENDANT:  No.

18    THE COURT:  Anyone made any promises apart from

19   what's in the plea agreement?

20    THE DEFENDANT:  No.

21    THE COURT:  Is your choice purely voluntary and an

22   act of free will?

23    THE DEFENDANT:  Yes.

24    THE COURT:  And, again, do you feel like you've had

25   adequate time to think about it and talk about it with your

1    lawyer?

2            THE DEFENDANT:  Yes.

3            THE COURT:  All right.  I understand that there is an

4    amended plea agreement which is filed at ECF number 31.  It's

5    nine pages long.  Do you have that in front of you there, Ms.

6    Schucker?

7            THE DEFENDANT:  Yes.

8            THE COURT:  And is that your signature on page nine

9    of this agreement?

10           THE DEFENDANT:  Yes.

11           THE COURT:  And did you read and understand this

12   whole agreement before you signed it?

13           THE DEFENDANT:  Yes.

14           THE COURT:  Did you talk with your lawyer about it

15   and was she able to answer any questions you had about this

16   agreement?

17           THE DEFENDANT:  Yes.

18           THE COURT:  And so you agree with everything that's

19   in these nine pages?

20           THE DEFENDANT:  Yes, I do.

21           THE COURT:  All right.  It says that -- the paragraph

22   above your name says, I have read this agreement and carefully

23   discussed every part of it with my lawyer, my attorney.  I

24   understand the terms of this agreement and I voluntarily agree

25   to those terms.

1      My attorney has advised me of my rights, of possible

2  defenses, of the sentencing provisions, and of the

3  consequences of entering into this agreement.

4      No promises or inducements have been made to me other

5  than those contained in this agreement.  No one has threatened

6  or forced me in any way to enter into this agreement.

7      Finally, I'm satisfied with the representation of my

8  attorney in this matter.

9      Was all of that true when you signed this agreement?

10      THE DEFENDANT:  Yes.

11      THE COURT:  And is it true today?

12      THE DEFENDANT:  Yes.

13      THE COURT:  And did you sign this agreement on or

14  about December 13th of 2023?

15      THE DEFENDANT:  Yes, I did.

16      THE COURT:  All right.  I would note that I also see

17  Mr. Reust's signature at the top of the page and, Ms.

18  Nieuwenhuis, that's your signature at the bottom?

19      MS. NIEUWENHUIS:  It is, Your Honor.

20      THE COURT:  All right.  At this point I'm going to

21  ask the government to place on the record whatever portions of

22  the amended plea agreement it thinks should be memorialized in

23  open court, skipping over what I have covered and the factual

24  basis for now.  At the end of that I'm going to ask you some

25  questions about that.

1          MR. REUST:  I'm going to begin on page 4 of the

2     amended plea agreement, Your Honor.

3          Paragraph 7 states that the United States agrees to

4     dismiss the underlying indictment at the time of Ms.

5     Schucker's sentencing.

6          Paragraph 8 says that if Ms. Schucker qualifies, the

7     United States would intend to move for an additional one level

8     off of her offense level if the adjusted offense level is 16

9     or greater.

10         Turning to paragraph -- or page 5, I'm sorry,

11    paragraph 10 states that the parties have no agreement about

12    the final sentencing guidelines range.

13         Paragraph 11, and this is important to the

14    government, it states that Ms. Schucker agrees not to seek or

15    obtain future employment in any facility that serves as a

16    correctional institution, including any prison, jail, halfway

17    house, or reentry center.

18         Going on to page 6, waiver of other rights.  The

19    Court has already alluded to this, but this is an appellate

20    waiver, and it states generally in sub-paragraph A that Ms.

21    Schucker agrees to waive all appellate rights except for those

22    explicitly reserved in sub-paragraph B, and those ones that

23    are reserved in sub-paragraph B are, first, that defendant's

24    sentence on any count of conviction exceeded the statutory

25    maximum; second, on page 7, that defendant's sentence was

1    based on unconstitutional factors such as race, religion,

2    national origin, or gender; third, that the guilty plea was

3    involuntary or unknowing; or, five (sic), that an attorney who

4    represented the defendant during the course of the criminal

5    case provided constitutionally ineffective assistance of

6    counsel.

7           Paragraph 14 states that Ms. Schucker agrees to not

8    make FOIA requests for the underlying investigative materials

9    in this case.

10          Paragraph 15 states that the Court is not a party to

11   the agreement.

12          Turning to page 8, paragraph 16 outlines that this

13   agreement is limited to the parties.  Specifically, that I can

14   only bind the U.S. Attorney's Office for the Western District

15   of Michigan and not any other branches of the U.S. Attorney's

16   office.

17          Paragraph 17 outlines that if Ms. Schucker were to

18   breach the plea agreement, the parties would be placed in

19   their pre-plea agreement position and the United States could

20   bring any charges that were warranted.

21          And then paragraph 18 states this is the complete

22   agreement.

23          THE COURT:  Thank you.  Ms. Schucker, did you hear

24   everything that Mr. Reust just said?

25          THE DEFENDANT:  I did.

1    THE COURT:  And do you disagree with anything that

2  Mr. Reust just said?

3    THE DEFENDANT:  Do I disagree?

4    THE COURT:  Do you disagree?

5    THE DEFENDANT:  No, I don't disagree with anything.

6    THE COURT:  All right.  Couple of points just so that

7  you are -- I want to make sure that you are aware of.  You

8  heard him say that by agreeing to this plea agreement,

9  pleading guilty to this charge, you won't be able to seek or

10  obtain future employment in any sort of correctional

11  institution, including halfway houses or reentry centers.  Do

12  you understand that?

13    THE DEFENDANT:  Yes.

14    THE COURT:  And prisons and jails obviously, too.  Do

15  you understand that, too?

16    THE DEFENDANT:  Yes.

17    THE COURT:  All right.  And in addition you are

18  agreeing to waive virtually all of your appeal rights.  You

19  have some un-waivable rights, and this is both for a direct

20  appeal of your sentence but also a -- any sort of collateral

21  attack or habeas petition that you could file down the road,

22  which would be a civil or collateral attack on your sentence

23  or conviction.

24    Do you understand that you are giving up essentially

25  all of those rights?

1          THE DEFENDANT:  Yes.

2          THE COURT:  All right.  Do you think you've been

3     promised, Ms. Schucker, anything that is not in the amended

4     plea agreement?

5          THE DEFENDANT:  No.

6          THE COURT:  All right.  Ms. Nieuwenhuis, anything

7     else you want to put on the record about the plea agreement?

8          MS. NIEUWENHUIS:  No, Your Honor.  Thank you.

9          THE COURT:  And are you aware of any side agreements?

10         MS. NIEUWENHUIS:  I am not, Your Honor.

11         THE COURT:  Mr. Reust, are you?

12         MR. REUST:  No.  There are none, Your Honor.

13         THE COURT:  All right.  So, one more time, do you

14    feel you've had adequate time to review the plea agreement and

15    talk about it with your lawyer before agreeing to it?

16         THE DEFENDANT:  Yes.

17         THE COURT:  Now, only Judge Beckering can decide

18    whether to accept or reject the plea agreement, which she'll

19    do at the time of sentencing.  Do you understand that, too?

20         THE DEFENDANT:  Yes.

21         THE COURT:  All right.  Then what remains is for us

22    to determine that there is a factual basis for the plea,

23    meaning that you actually did the crime that you're guilty of,

24    which is important and was the hang up last time, so you

25    understand that it's important.

1          There is a factual basis of guilt set out in the plea

2     agreement -- the amended plea agreement.  Mr. Reust, I don't

3     know if you want to just walk through that or if you have

4     something else you want to add to that or subtract from that,

5     but I'll let you put the factual basis on the record.

6          MR. REUST:  I would just walk through that, Your

7     Honor.

8          So, reading the relevant portions of paragraph 6 of

9     the plea agreement which appears on page 3 and I think

10    continues over to page 4, in June and July of 2022 the

11    defendant engaged in a sexual relationship with an inmate at

12    the Northlake Correctional Facility in Baldwin, Michigan,

13    where she was employed as a case manager.  She had intercourse

14    with that inmate on multiple occasions.

15         On September 7th of 2022 the defendant was

16    interviewed by special agents of the Department of Justice

17    Office of Inspector General at the Northlake Correctional

18    Facility.  Investigators asked the defendant, quote, have you

19    ever had sex with an inmate, end quote.  The defendant

20    responded, quote, no, end quote.

21         That was a lie and defendant knew it was a lie.

22    Prior to speaking with those investigators the defendant was

23    informed that lying to the investigators was a violation of

24    federal law.  Defendant's intentionally false statement was

25    material to the Department of Justice Office of Inspector

1    General because it was relevant to their underlying

2    investigation into sex with an inmate.

3           At the time defendant had sex with the inmate and

4    during her interview the Northlake Correctional Facility was a

5    federally contracted facility where Bureau of Prisons' inmates

6    were held so the United States had jurisdiction over matters

7    occurring there.

8           THE COURT:  And is it also fair to say that the crime

9    they were investigating was within Chapter 109A of Title 18?

10          MR. REUST:  That's correct, Your Honor.  Sexual abuse

11   of a ward.

12          THE COURT:  Sexual abuse of a ward under 18 United

13   States Code 2243(b)?  All right.

14          Ms. Schucker, did you hear everything that Mr. Reust

15   just said?

16          THE DEFENDANT:  Yes, I did.

17          THE COURT:  Do you agree with everything that Mr.

18   Reust just said?

19          THE DEFENDANT:  Yes, I do.

20          THE COURT:  All right.  In June and July of 2022 did

21   you have a sexual relationship with an inmate at the Northlake

22   Correctional Facility in Baldwin, Michigan?

23          THE DEFENDANT:  Yes, I did.

24          THE COURT:  And that person was an inmate at the

25   time?

1      THE DEFENDANT:  Yes.

2      THE COURT:  And at that time you were a case manager

3   there?

4      THE DEFENDANT:  Yes.

5      THE COURT:  On September 7th of 2022 were you

6   interviewed by special agents of the Department of Justice

7   Office of Inspector General?

8      THE DEFENDANT:  Yes.

9      THE COURT:  And did that interview happen at the

10   Northlake Correctional Facility?

11      THE DEFENDANT:  Yes.

12      THE COURT:  Which is in this judicial district, I

13   assume.  It's Lake -- is it Lake County?

14      MS. NIEUWENHUIS:  Yes.

15      THE DEFENDANT:  Yes.

16      THE COURT:  All right.  And they asked you have you

17   ever had sex with an inmate?  Did they ask you that?

18      THE DEFENDANT:  Yes.

19      THE COURT:  And you responded, no?

20      THE DEFENDANT:  Yes, I did.

21      THE COURT:  And did you know that that was a lie at

22   the time?

23      THE DEFENDANT:  Yes, I did.

24      THE COURT:  All right.  And they had informed you

25   that lying to investigators is a violation of federal law?

1        THE DEFENDANT:  Yes.

2        THE COURT:  And that will -- you agree that that

3   false statement was material to their investigation of whether

4   or not you should be charged with sexual abuse of a ward?

5        THE DEFENDANT:  Yes.

6        THE COURT:  And that's what was charged in your

7   original indictment; do you recall that?

8        THE DEFENDANT:  Yes.

9        THE COURT:  All right.  Well, at all times relevant

10  to this charge, so June and July and September of 2022 the

11  Northlake Correctional Facility was a federally contracted

12  facility, correct?

13       THE DEFENDANT:  Yes.

14       THE COURT:  At least, you don't agree with that?

15       THE DEFENDANT:  No, I don't disagree.  I just had to

16  try and think when they closed it down but, yes, it was

17  still --

18       THE COURT:  All right.  And Bureau of Prisons'

19  inmates were held there at the time?

20       THE DEFENDANT:  Yes.

21       THE COURT:  Mr. Reust, are you satisfied there's a

22  factual basis?

23       MR. REUST:  Yes, Your Honor.

24       THE COURT:  Ms. Nieuwenhuis, are you?

25       MS. NIEUWENHUIS:  I am, yes, Your Honor.

1           THE COURT:  Thank you.  I am as well, and I'll make

2    the following findings:

3           I find that the defendant understands the nature of

4    the charge and the penalties provided by law.  I find that the

5    plea is made knowingly and with full understanding of each of

6    the rights that I've explained.  I find that the plea is

7    voluntary and free of any force, threats, or promises apart

8    from what's in the plea agreement.  I find also, as I said,

9    that the plea has a sufficient factual basis.

10          I will defer acceptance of the plea agreement to

11   Judge Beckering which decision will be made after she's had an

12   opportunity to review the pre-sentence report, and I will

13   recommend that Judge Beckering accept the plea and adjudicate

14   you guilty.

15          The parties will have 14 days from the service of my

16   report and recommendation to make any objections to it.

17          So, the next thing that will happen is Judge

18   Beckering's case manager will set a sentencing hearing.

19   Usually those run three to four months out.  Probably a little

20   closer to four these days, is that fair to say?

21          THE CLERK:  Yes.

22          THE COURT:  In the meantime, between now and then Ms.

23   Nieuwenhuis will need your help in order to provide the

24   information to the probation officer who will draft that

25   pre-sentence report that we've discussed at length now, so she

1  will be in contact with you regularly and need your assistance

2  in preparing for that.

3           Do you understand, Ms. Schucker, everything that

4  happened in court today?

5           THE DEFENDANT:  Yes, I do.

6           THE COURT:  Do we need to address bond in any

7  respect?

8           MR. REUST:  I don't believe so, Your Honor.

9           THE COURT:  All right.  You're going to stay on bond

10 pending sentencing.  It is important that you keep the terms

11 of your bond in mind.  It can be a really stressful time for

12 people.  Right now you've just plead guilty to a felony and

13 you're awaiting sentencing, and that can sometimes cause

14 people to do crazy things, and I would advise you strongly

15 that violating your bond would be about the worst thing you

16 can do pending your sentencing in the case.  Do you understand

17 all of that?

18          THE DEFENDANT:  Yes, I do.

19          THE COURT:  Did you understand everything that

20 happened in court today?

21          THE DEFENDANT:  Yes, I do.

22          THE COURT:  And do you have any questions at all for

23 me?

24          THE DEFENDANT:  No, ma'am.

25          THE COURT:  Counsel, anything else we need to take

1    up?  Ms. Nieuwenhuis?

2              MS. NIEUWENHUIS:  No, Your Honor.  Thank you.

3              THE COURT:  Mr. Reust?

4              MR. REUST:  No, Your Honor.  Thank you.

5              THE COURT:  Did I forget anything?

6              MR. REUST:  Not that I noticed, Your Honor.

7              THE COURT:  All right.  Then we'll be adjourned.

8              THE CLERK:  All rise, please.  Court is adjourned.

9               *(Whereupon, hearing concluded at 3:29 p.m.)*

*C E R T I F I C A T E*

I certify that the foregoing is a transcript from the Liberty Court Recording System digital recording of the proceedings in the above-entitled matter to the best of my ability.


/s/ Genevieve A. Hamlin
Genevieve A. Hamlin, CSR,RMR, CRR
U.S. District Court Reporter
Grand Rapids, MI 49503